CAYTON, Plaintiff in Error, v. HARDY, Defendant in Error.

1. Acts of a partner wholly outside the scope of the partnership business and known to be so by the person dealing with such partner are not binding upon the other partner.

2. In determining whether particular acts of a partner are within the scope of the partnership business and binding upon all the partners, if the partnership articles are not decisive of this question, the previous dealings and acts of the partners or of any of them, the length of time these acts have continued, &c., may be considered.

### Error to Ralls Circuit Court.

This was an action to recover possession of two yoke of oxen. It appeared in evidence that said oxen were a portion of the stock of a farm held and leased by the plaintiff. The defence relied on was that said stock was owned by said plaintiff Cayton and one Robertson as partners, and that Robertson sold said oxen to defendant. The defendant introduced in evidence the following agreement: "Francis M. Cayton, the party of the first part, agrees to furnish a tract of land large enough to make a good stock farm; also agrees to furnish farming utensils sufficient for use of said farm; and also agrees to furnish four brood mares or more as he may choose, and one hundred (more or less) stock cattle; and also agrees to furnish one hand to work on said farm. And the party of the second part agrees to take charge of said farm and stock, and work and pay strict attention to the same; also agrees to improve said land sufficient for all the stock that may be on it, at the expense of each party; and for such services the party of the first part agrees to give the party of the second part one-third of the proceeds of the farm and stock after replacing all the stock put on the farm in the first place. The parties are to live on the farm. This copartnership to last five years, unless one of the parties becomes dissatisfied. Witness our hands and seals. [Signed] Francis M. Cayton (seal). David C. Robertson (seal)."

The two yoke of oxen in controversy composed a portion of the stock of the said farm furnished by said Cayton. They were sold by Robertson to the defendant at the price of forty dollars per yoke. This price was paid. The court, at the instance of the defendant, instructed the jury as follows: "The written instrument read in evidence and signed by Francis M. Cayton and David C. Robertson constituted Cayton and Robertson partners as to third persons of the cattle and stock and proceeds of the farm named in said written instrument; and if the jury believe from the evidence that Robertson sold the cattle in controversy to the defendant, and

that they were when so sold a part of the stock named in the said writing, such sale to Hardy by Robertson was good in law to divest the title of Cayton, and the verdict should be for defendant, unless the jury should further find from the evidence that said Robertson sold said stock with the intent to defraud the plaintiff, his copartner, and that defendant purchased with notice of such intent."

The plaintiff took a nonsuit, with leave, &c.

*Porter & Harrison* and *Mc Cabe*, for plaintiff in error.

I. The court erred in instructing the jury that the instrument of writing read in evidence constituted Cayton and Robertson partners. It did not constitute them partners either *inter sese* or as to third persons. (Colly. on Part. 14, 19; 4 East, 144; 3 Wils. 40; 15 Mo. 481; 15 S. & R. 137; 17 Mass. 197; 14 Pick. 192; 12 Conn. 69; 18 Wend. 175; 20 Wend. 70; 17 Ves. 404; 4 B. & Cr. 867; 1 Rose, 191; 18 Wend. 184; 6 Metc. 82; 6 Halst. 181; 15 Ills. 31; 4 Paige, 148.)

*Lamb & Lakenan*, for defendant in error.

I. Cayton and Robertson were clearly partners, both as between themselves and as to third persons. Each party had the power to dispose of the stock of the farm aside from the power he would have as partner. The agreement clearly contemplates sales of the stock and proceeds.

NAPTON, Judge, delivered the opinion of the court.

The instruction of the court in this case declared the articles of agreement produced in evidence to constitute a partnership between Cayton and Robertson, as to third persons, of the cattle and stock and proceeds of the farm, and that the sale to defendant was valid, unless the jury believed there was fraud on the part of Robertson, and that the defendant knew of and participated in the fraud.

That the written instrument executed by Cayton and Hardy constituted a partnership between them is by no means

clear.   The intention would rather seem to be to constitute a mere agency in Robertson, with a compensation for his labor and services in a sum proportioned to the profits. (Pennie v. Hankinson, 6 Hals. 181.)   But the parties themselves call it a partnership, and as Robertson was to share the *nett* profits and not the *gross* profits, the court may have been right in declaring them partners upon the authority of Dry v. Boswell, 1 Camp. 329; and at all events partners as to third persons.   (Story on Part. § 60 ; Chase v. Barrett, 4 Paige, 148 ; Grace v. Smith, 2 Black. 988.)   The subject is one upon which the distinctions are very refined, and we are not satisfied that the instruction was wrong in this particular.   Nor does the question seem very material; for, whether there was a partnership or a mere agency, the question still remains whether the sale was authorized either by one species of agency or another.

Each partner has undoubtedly full power to dispose of the entire right of all the partners for the purposes of the partnership and in the name of the firm.   Unless the contract provides otherwise, the partners are joint owners of all the capital stock, funds and effects belonging to the partnership, and each partner may dispose of his capital or fund for purposes *within the scope of the partnership*.   Chancellor Kent says that " in ordinary cases, and in the absence of fraud on the part of the purchaser, each partner has the complete *jus disponendi* of the whole partnership interest."   But in every contract of this sort it is manifest that we must look to the scope of the partnership business to see whether the partner is violating his obligations, and whether the purchaser was likely to be innocently misled.   The following observations of Judge Story, in this connexion, are so pertinent and just that we transcribe them : " The real difficulty," says Judge Story, " in many of these cases (speaking of engagements which ought to bind the partnership) is to ascertain what contracts, engagements and acts are properly to be deemed within the scope of the particular partnership, trade, or business ; for these are not exactly the same in all sorts of trade

or business. On the contrary, in many cases, rights, powers and authorities over partnership property and partnership concerns exist by usage, or by general understanding, or by natural implication, which are wholly unknown in others. To answer the inquiry, it is not enough to show that in other trades or other business, certain rights, powers and authorities are incident thereto and may be lawfully exercised by such of the partners, but we must see that they appropriately belong to or are by usage or otherwise implied or incidental to the particular trade or business in which the partnership is engaged." (Story on Part. § 173.)

It is manifest that the agreement in this case, whether regarded as constituting a copartnership or an agency, did not confer on Robertson any power or authority to sell the farm, the brood mares, the stock cattle, or the farming utensils; that the sale of these things was not within the scope of the business; and that the anticipated profits were not expected to be created by such sales at all, but from the *proceeds* of the farm, farming implements, stock, &c., in the shape of grain, fatted cattle, or other produce. That Robertson had no authority to sell the work oxen derived from the agreement is clear; and, if the agreement constituted a partnership, neither had Cayton. Such sales were not the business contemplated. This consideration alone does not however make the defendant liable; for, if he had reason to believe from the ordinary course of their dealings that such authority did exist, he ought not to bear the loss. The question therefore ought to be put to the jury, not merely whether this sale was a fraud upon the part of Robertson and made with the knowledge and participation of Hardy, but whether it was wholly outside of the scope of the partnership business, not merely as indicated by the articles of agreement, of which the public could be presumed to have no notice, but as determined by the conduct of the parties to it in dealing with their neighbors. If it was, that circumstance ought at least to have put the purchaser upon inquiry. The previous dealings and acts of Robertson and Cayton, or of either, the

length of time these acts had continued, the price at which the cattle sold, are all circumstances which may be given in evidence, and may show, and would no doubt satisfactorily show, upon whom this loss should fall. The nonsuit will be set aside and the case remanded for trial.

Judgment reversed and cause remanded; Judge Richardson concurring. Judge Scott absent, through indisposition.