KELLEY–GOODFELLOW SHOE COMPANY, Respondent, v. LONG–BELL LUMBER COMPANY, Appellant.

Kansas City Court of Appeals, December 17, 1900.

1. **Partnership: AGENCY: POWER OF PARTNER: USAGE.** Each member of a partnership is the general agent thereof in regard to all matters within the scope of the partnership dealings but to bind his co-partners his action must be within the scope of the ordinary business and transactions of the firm, but custom and usage may raise a presumption that he is endowed with certain powers unless there is something to repel such presumption.

2. ———: ———: ———: **GUARANTEE.** A member of a lumber firm has no implied power to bind his co-partners by a guarantee even though he be its general manager; and the party taking such guaranty must at his peril require evidence of his special authority.

3. ———: ———: ———: ———: **CUSTOM.** The custom among jobbers, of which courts will take notice, to purchase of each other small bills of goods for their customers and have the same charged to the purchaser, will not serve to take the present case out of the general rule that there must be a special authority to make a guaranty.

Appeal from the Jackson Circuit Court.—*Hon. J. H. Slover,* Judge.

REVERSED.

*Kinley, Carskadon & Kinley* for appellant.

(1) Under the articles of association, as set forth in the statement, T. W. VanCleave, as one member of the firm of the Martin Lumber Co., had no authority to guarantee the payment of the bill sued on. Lindley on Partnership (2 Am. Ed.), p. 256; Irwin v. Williar, 110 U. S. 505. (2) If an act is done by one partner on behalf of the firm, and it was not necessary for carrying on the partnership business in the ordinary way, the firm will *prima facie* be not liable; and before liability can attach it must be shown that authority to do the act in question, or some ratification of it, has been conferred or made by the other partners. (3) It is the duty of everyone who deals with a member of a commercial partnership out of the line of the business of such partnership, to require evidence of that partner's special authority to bind his co-partners, and this at the risk and peril of said party. Allen v. Cary, 33 L. A. 1455. (4) One partner can not, without the assent of his co-partners, bind the firm for his individual debt or that of a third person. (5) One member of a co-partnership can not be made liable for the act or undertaking of another in a transaction not embraced in their original partnership business, unless proof is adduced that he knew of the transaction and assented to it, or subsequently ratified it. Goodman v. White, 25 Miss. 163; Hotchin v. Kent, 8 Mich. 526; Cayton v. Hardy, 27 Mo. 536; Scott v. Bandy, 2 Head (Tenn.), 197; Rimel v. Hayes, 83 Mo. 200; Chandler v. Sherman, 16 Flor. 99; Irwin v. Williar, 110 U. S. 505; Bank v. Schoen, 123 Mo. 650. (6) A partner has not power to bind the firm by indorsing a note for the accommodation of another. Smith v. Weston, 34 N. Y. S. 557; 88 Hun. 25. (7) The managing partner of a lumber company is not *prima facie* authorized to bind his company for his own and others' ac-

counts for store goods. Lumber Co. v. Lee, 27 S. W. Rep. 161; Sentell v. Rivers, 48 L. A. 1214; Olive v. Morgan, 28 S. W. Rep. 572. "We will concede the proposition that one partner can not make a promise to pay the debt of another (person) which will bind the firm." Language of Judge Ellison of this court in Winn v. Hillyer, 43 Mo. App. 139.

*John C. Yocum* and *Collins, Jamison & Chappell* for respondent.

(1)  A partnership is bound by the act of one of its members in signing the firm's name as surety to a note given by another partnership, of which the surety firm is a constituent member, the two firms being in the same business. McLaughlin v. Mulloy, 47 Pac. Rep. (Utah 1897), 1031. Paper Co. v. Emerson, 46 N. E. Rep. (Ind. 1897), 1018; Lane v. Mayer, 44 N. E. Rep. (Ind.), 73; Pugh v. Barnes, 19 So. Rep. (Ala.), 370; Winn v. Inv. Co., 125 Mo. 528; Cress v. Blodgett, 64 Mo. 452; Bank v. Leyser, 116 Mo. 51; State v. Railroad, 125 Mo. 596; Rogers & Peak v. Gosnell, 51 Mo. 466; Bank of Scott City v. Sandusky, 51 Mo. App. 398; Lowe v. Springs Co., 47 Mo. App. 426; Simpson v. Schulte, 21 Mo. App. 639; Marks v. Bank, 8 Mo. 316; Lancaster v. Elliott, 55 Mo. App. 249; Inc. L. Co. v. Mfg. Co., 64 Mo. App. 115.  (2)  In general, a waiver of any legal right, at the request of another party, or any benefit to the defendant, or any act done at the defendant's request and for his convenience, or to the inconvenience of the plaintiff, would be sufficient to support a promise by the defendant. Given v. Corse, 20 Mo. App. 132; Houck v. Frisbee, 66 Mo. App. 16.  (3)  An agreement by a firm with a customer to honor drafts drawn on it by the customer in favor of a person furnishing the customer with money to purchase cattle to be consigned to

it, renders it liable on such a draft to the person furnishing money for such purpose. Bank v. Rowley, 1 N. W. Rep. 195; Agriculture Works v. Sims, 26 S. W. Rep. (Tex.), 514; Bank of the Republic v. Dickinson, 18 So. Rep. (Ala.); Rice v. Jackson, 171 Pa. St. Rep. 89; Barber v. Van Horn, 36 Pac. Rep. (Kan.), 1070. (4) When a managing partner authorized a vendor to deliver goods to a third party, the firm was held liable upon the doctrine that it was usual and proper for merchants in different kinds of business to furnish each others' customers with articles which are charged to the house and not the buyer, the court taking judicial notice of each custom. Cameron v. Blackman, 39 Mich. 108; Am. and Eng. Ency. of Law, p. 100, n. 2; 2 Lindley on Part., p. 412; Cargill & Owen v. Corby, 15 Mo. 427; Bates v. Forcht, 89 Mo. 121; Bates on Part., sec. 367; Hayner v. Crow, 79 Mo. 293; Walther v. Merrell, 6 Mo. App. 370; Pomeroy v. Benton, 57 Mo. 531, 545; Collyer on Part., sec. 182; Filburn v. Ivers, 92 Mo. 388; Bank v. Schoen, 123 Mo. 650, 657; Bissell v. Warde, 129 Mo. 439, 454; Winn v. Hillyer, 43 Mo. App. 143, 144; Matson v. Frazer, 48 Mo. App. 302; Flynn v. Neosho, 114 Mo. 567; Miller v. Leeper, 120 Mo. 466; Smith v. Johnson, 107 Mo. 494; Churchman v. Kansas City, 49 Mo. App. 366.

SMITH, P. J.—The Martin Lumber Company (Limited), which for convenience we shall hereafter refer to as the Louisiana company, a corporation engaged in the manufacture of lumber at Bolinger, in the state of Louisiana, kept a branch business office in St. Louis until January 1, 1897, when the same was discontinued. One VanCleave, who had been in charge of the St. Louis business office, for the purpose of succeeding to the business that had been built up by it at that place, entered into a co-partnership with the Long-Bell Lumber Company, a manufacturing corporation, under the name

and style of the Martin Lumber Company. The co-partnership thus formed opened its chief business office in the same building in St. Louis in which the Louisiana company had formerly kept its office. VanCleave was placed in charge of the business of the partnership at this office. The Martin Lumber Company, it seems, sustained no other relation to the Louisiana company than that of purchaser of its monthly output to the amount of five or six thousand dollars.

The Louisiana company sent VanCleave an order for a bill of shoes with a request that he place it and have the goods shipped. The latter handed the order to the plaintiff who, on investigation, declined to extend credit to the Louisiana company and so refused to fill the order, of which it gave notice to that company. The Louisiana company thereupon informed VanCleave, who was then in New York, of the action of the plaintiff. VanCleave then wrote a letter to the plaintiff signed Martin Lumber Co., Per T. W. VanCleave, Prest., telling it that the Martin Lumber Company would guarantee that the Louisiana company would pay the bill for the shoes ordered by the latter, and if this was satisfactory to ship the goods at once. On receipt of this letter the plaintiff wrote to the Martin Lumber Company saying it would fill the order on the basis that it would guarantee the bill. The Martin Lumber Company thereupon wrote the plaintiff inclosing the original order for the shoes. Two days later the plaintiff wrote the Martin Lumber Company that it had filled the order of the Louisiana company and shipped the goods and would charge the same to it—the Martin Lumber Company. The Louisiana company became defunct and the partnership under the name of the Martin Lumber Company was dissolved within a couple of months after the plaintiff filled the order of the Louisiana company for the shoes.

This action was brought against the Long-Bell Lumber

Company a member of the partnership under the name of the Martin Lumber Company to recover the amount of the bill for the shoes.    The cause was tried by the court without the aid of a jury and judgment given for plaintiff.

The question decisive of the case here is whether or not the letter of guaranty given by VanCleave in the name of the Martin Lumber Company is binding on it, for if so the defendant, the Long-Bell Lumber Company, is liable—otherwise, not. Every partner is an agent of the partnership, and his rights, powers, duties and obligations are in many respects governed by the same rules and principles as those of an agent.    One partner by virtue of the partnership relation is constituted a general agent for another as to all matters within the scope of the partnership dealings and has communicated to him, by virtue of that relation, all authorities necessary for carrying on the partnership, and all such as are usually exercised by partners in that business in which they are engaged.    Story on Part., sec. 101; Lindley on Part. (2 Am. Ed.), 256; Hawkins v. Bourne, 8 M. & W. 703; Irwin v. Palmer, 110 U. S. 505.    Each partner may enter into any contracts or engagements on behalf of the firm in the ordinary trade and business thereof; as, for example, by buying, or selling, or borrowing moneys or by drawing or negotiating, or indorsing, or accepting bills of exchange and promissory notes and checks and other negotiable securities, or by procuring insurance for the firm or by doing any other acts which are incident or appropriate to such trade or business according to the common course and usages thereof.

Whenever credit is given to a firm within the scope of the business of that firm, whether the partnership be of a general or a limited nature, it will bind all the partners, notwithstanding any secret reservations between them unknown to those who give the credit.    The authority of a partner to be

valid must be exercised in cases within the scope of the ordi-
nary business and transactions of the firm.    And powers and
authorities not ordinarily deemed within the scope of a part-
nership require special delegation to confer them.    And in
ascertaining what contracts, engagements and acts are properly
within the scope of a particular partnership, trade or business,
it is not enough to show that in other trades or other business
certain rights, powers and authorities are incident thereto
and may be lawfully exercised by each of the partners, but we
must see that they appropriately belong to, or are by usage or
otherwise implied or incidental to the particular trade or busi-
ness in which the partnership is engaged.    Story on Part., secs.
111, 113, 114.    There are certain powers and authorities
which from long usage and recognition are so generally at-
tracted to all sorts of partnerships that they will be deemed
to exist by presumption of law, unless there is clear evidence to
repel the presumption, or some positive contrary stipulation
between the parties.

But where one partner gives a letter of guaranty in the
name of the partnership it is not to be treated as of course
binding on the partnership, for it is not a natural or necessary
incident in all sorts of partnerships for one partner to possess
the power to bind his co-partners by a guaranty.    It must be
shown to be justified, either by the usages of the particular
trade or business or by the known habits of the particular
partnership or by the express or implied approbation of all
the partners in the given case.    Story on Part., secs. 114, 127
and cases there cited.    And it has been declared in effect in
numerous cases that one member of a co-partnership can not
be made liable for the act or undertaking of another in a
transaction not embraced in their original partnership busi-
ness unless proof is adduced that such member knew of the
transaction and assented to, or subsequently ratified it.    Cayton

v. Hardy, 27 Mo. 536; Rimel v. Hayes, 83 Mo. 200; Goodman v. White, 25 Miss. 163; Scott v. Bandy, 2 Head (Tenn.), 197; Chandler v. Sherman, 16 Flor. 99. And so it has been ruled that it is the duty of every one who deals with a member of a commercial partnership out of the line of business of such partnership to require evidence of that partner's special authority to bind his co-partners—and this at the risk and peril of said party.    Allen v. Cary, 33 La. Ann. 1455.

Applying the foregoing principles of the law of partnership to the facts of this case as we have stated them to be and it seems clear to us that the defendant can not be held liable. The plaintiff was apprised by the commercial report, to which VanCleave in the letter of guaranty referred, of the nature and character of the business of the Martin Lumber Company. That letter inclosed the business card of the Martin Lumber Company which informed the plaintiff that it was a "manufacturer and wholesale dealer in quarter-sawed flooring, casing and base yellow pine lumber, cypress shingles, Washington red cedar lumber and shingles." The plaintiff must therefore be held to have known, when accepted by it, that the writing by VanCleave of the letter of guaranty in the name of the Martin Lumber Company involved an exercise by him of a power not within the scope of the ordinary business and transactions of the partnership, nor incident or appropriate to its business according to the common course and usages thereof. Lindley on Part., 263. It would not, according to the principles to which we have already adverted, be within the scope of the authority of a partner of a firm engaged in the manufacture and sale of lumber to contract for the purchase of a bill of shoes or groceries, or drugs, or dry goods, or liquors, and thereby bind the partnership therefor, unless it should appear, as it does not in the present case, that the exercise of such authority was justified by the usages of the lumber business,

or by the habits of the partnership, or by the express or implied approbation of the other partners.  The letter of guaranty given by VanCleave in the name of the Martin Lumber Company is not to be treated as of course binding on the company for it is not a natural or necessary incident in all sorts of partnerships for one partner to possess the power to bind the co-partners by guaranty, and, therefore, before such guaranty can be considered binding on the defendant, the other partner, it must appear, as it does not, that there was a delegation by the defendant of special authority to him—VanCleave—to give such guaranty.  The dealing which the plaintiff had with VanCleave was most manifestly in respect to a matter out of the line of the business of the partnership—the Martin Lumber Company.  This fact it was bound to know.  It was its duty to have required VanCleave, at its peril, to produce evidence of his authority to bind the Martin Lumber Company.

There is no pretense that VanCleave was authorized by the articles of co-partnership or by any special delegation of authority to either bind the partnership by guaranty or by outright purchase of the plaintiff's goods.  And if we regard VanCleave as the general agent of the Martin Lumber Company, representing it as the managing partner, still we can not hold that company either liable on the guaranty or for the purchase price of the goods because he was most obviously not acting within the scope of his apparent authority.  The plaintiff had the right to assume that VanCleave was empowered to do for the Martin Lumber Company whatever was necessary for the transaction of its business in the way in which that business is ordinarily carried on by others, but it had no right to assume that he had a more extensive authority.

It is a custom, of which courts will take notice, prevailing among jobbers in the various lines of merchandise, to purchase

of each other small bills of goods for their customers and have the same charged to them, the purchasers, but a guaranty or purchase like the present is not authorized by any such custom. McLaughlin v. Mulloy, reported in 47 Pacific Reporter 1031, is in its facts not analogous to the present case and therefore it is inapplicable. There is nothing in the business relations existing between the Martin Lumber Company and the Louisiana company which would justify the application here of the rule of liability declared in the case just referred to.

It is our conclusion that in refusing the defendant's instruction in its nature a demurrer to the evidence the court erred, and for which the judgment must be reversed. All concur.